UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CITGO PETROLEUM CORPORATION,      )
                                   )
              Plaintiff,           )
                                   )
v.                                 )       Case No. 04-CV-0482-CVE-SAJ
                                   )
BRAY TERMINALS, INC.,              )
                                   )
              Defendant.           )

OPINION AND ORDER

Now before the Court is plaintiff's motion for summary judgment (Dkt. # 25).  This case

involves enforcement by plaintiff CITGO Petroleum Corporation ("CITGO") of a contract for the

sale of goods against defendant Bray Terminals, Inc. ("Bray") (Dkt. # 1).  In its answer, Bray raises

affirmative defenses, as well as counterclaims against CITGO for breach of contract, breach of duty

of good faith,   intentional interference with contractual relationship and potential business

advantage, violation of the Petroleum Marketing Practices Act ("PMPA"), and violation of the

Sherman Act (Dkt. # 4).  CITGO seeks summary judgment against Bray for breach of contract in

the amount of $193,671.04 plus interest, costs, and attorney's fees, and summary judgment against

Bray on its counterclaims.

I.

CITGO and Bray have a business relationship that spans more than thirty years.  CITGO, a

Delaware corporation with its principal place of business in Tulsa, Oklahoma, is a refiner and

marketer of gasoline, lubricants, and other petroleum products.  Bray, a New York corporation, sells

petroleum products to service stations in upstate New York.  The parties executed the Distributor

Franchise Agreement ("DFA"), effective January 1, 1996, whereby Bray would act as a distributor

of CITGO's petroleum products.  Under the DFA, CITGO agreed to sell and deliver, and Bray agreed to purchase and accept, certain amounts of petroleum products each month for distribution by Bray to retail stations under CITGO's trademark.  Plaintiff's claim arises under the terms of the DFA.

Plaintiff alleges that, between December 2002 and January 2003, Bray purchased from CITGO gasoline, diesel, and other petroleum products, which were delivered by CITGO to Bray's facilities.  Plaintiff further alleges that Bray failed to pay the invoices for such products delivered during this period.  According to CITGO's records, the amount of such unpaid invoices totals $193,671.04.  In support of its claim, CITGO has provided the invoices reflecting that Bray owes CITGO $193,671.04.  The validity of these invoices is supported by affidavit.  See Dkt. # 26, Ex. A, Aff. of Kenneth Foster, at ¶ 9.  Foster, CITGO's Credit Manager for the Northeast Region, affied that, beginning in December 2002, "CITGO made its electronic payment demand upon Bray's bank and was notified a 'payment stop' had been initiated by Bray on CITGO's drafts" and "Bray has failed and refused to pay all or any portion of the amount owed, in breach of its contracts with CITGO."  Id. at ¶¶ 8, 10.  Moreover, Bray's president admits that Bray has no evidence that CITGO's invoices are incorrect.  Dkt. # 26, Ex. B, Deposition of Dana Bray, Jr., at 131.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

2

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

3

## III.

CITGO argues that it has presented sufficient evidence to prove Bray owes CITGO $193.671.04 under the terms of the DFA.  Specifically, CITGO has submitted Foster's affidavit and the invoices as evidence that Bray owes CITGO $193,671.04.  CITGO further argues that, with regard to the amount of the debt, Bray has failed to establish that there is a genuine issue of material fact, and therefore CITGO is entitled to judgment as a matter of law.

With regard to the amount of the debt, Bray raises several affirmative defenses.  First, Bray argues that there has been accord and satisfaction, but presents no evidence of any subsequent agreement to support this defense.  Second, Bray argues lack of consideration.  This defense is not supported by the record, which shows that CITGO delivered goods to Bray as agreed and Bray received these goods.  Third, Bray argues that it satisfied the contract and paid all debts owed.  Bray presents no facts to show payment, nor any evidence to refute the figure set forth by CITGO and supported by CITGO's records.  Finally, Bray argues that it is entitled to offset the $193,671.04 debt with 1988 throughput charges of $46,735.21.  These alleged throughput charges are barred by the Oklahoma[1] five-year statute of limitations for contract actions, Okla. Stat. tit. 12, § 95.  See IV.A, infra.

The party opposing summary judgment has the burden to produce evidence which could lead a rational trier of fact to find for the non-moving party.  Matsushita, 475 U.S. at 586-87.  Bray presents no authority to support its defenses, and the Court finds that Bray has failed to demonstrate that a genuine issue of material fact exists.  Accordingly, the Court finds that CITGO is entitled to summary judgment against Bray for breach of contract.

---

[1]     The DFA has an Oklahoma choice of law provision.

**IV.**

Reading Bray's pleadings generously, the Court identifies the following counterclaims against CITGO: breach of contract; breach of good faith and fair dealing; intentional interference with contractual relationships and intentional interference with potential business advantage; violation of the PMPA; and violation of the Sherman Act (Dkt. # 4).   CITGO denies all counterclaims and asserts the following affirmative defenses to them: statute of limitations;  laches; unclean hands; accord and satisfaction; failure to state a claim; estoppel; and waiver of right to assert counterclaims (Dkt. # 6).

**A.**

Bray contends that CITGO breached multiple contracts, including a 1969 letter agreement,[2] a 1988 exchange agreement, and the DFA.  Dkt. # 26, Ex. C, Bray's Interrogatories Response, at 1. Under Oklahoma law, contract claims are subject to a five-year statute of limitations.  Okla. Stat.

---

[2]     This counterclaim based on the 1969 letter agreement also fails on substantive grounds. Bray assumes that the 1969 letter agreement respresents "the commitment to throughput all CITGO product at Rensselaer."  Dkt. # 26, Ex. C, Bray's Interrogatories Response, at 11. However, the letter agreement establishes no such commitment.  This letter agreement was signed by Robert Hunt, Senior Attorney for CITGO.  The letter and Hunt's testimony show that the letter agreement was an assurance to First National Bank of Glens Falls, New York, that Cities Service, or CITGO, would reassign the proceeds of the throughput agreement if Bray defaulted on its loan.  Dkt. # 32, Ex. A, Hunt March 28, 1969, Letter to First National Bank; id. Deposition of Robert G. Hunt, at 33.

tit.12, § 95.  Therefore, the latest of these counterclaims was barred no later than 2001.[3]  In an effort to circumvent the statute of limitations, Bray argues that his counterclaims arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim . . ."  Okla. Stat. tit. 12, § 2013.  Bray portrays the pertinent transaction as the general business relationship between Bray and CITGO, but cites no authority to support its broad reading of section 2013.  Dkt. # 34, at 11.  Section 2013 further states that "[w]here a counterclaim was barred by a statute of limitation before the claim of the opposing party arose, the barred counterclaim cannot be used for any purpose." Okla. Stat. tit. 12, § 2013(C); see Bank of Oklahoma v. Briscoe, 911 P.2d 311, 319 (Okla. Civ. App. 1995) ("to the extent the violations occurred more than a year before the date [defendant] was deemed to be in default under his note and mortgage – i.e., more than a year before [plaintiff's] right of action accrued – then [defendant] is precluded by section 2013 from raising claims based on those violations in his defense of [plaintiff's] action against him.").  CITGO's claims arose from Bray's failure to pay beginning in December 2002.  Bray's contractual counterclaims were barred before that time and, therefore, the statute of limitations has run.

---

[3]     Bray alleges that he "began to suffer damages from the breach of the [1969] letter agreement from when CITGO opened the Albany terminal . . ." in 1988 or 1989. Dkt. # 34, at 5, ¶ 12. Therefore, assuming a basis for this contractual counterclaim, it would be barred by the statute of limitations.  Additionally, under an exchange agreement, Bray alleges CITGO failed to pay $46,735.21 in throughput charges in 1988.  Therefore, this breach of contract claim is barred by the statute of limitations.  See Pitts v. Walker, 105 P.2d 760, 761 (Okla. 1940) (holding that "the statute [of limitations] commences to run on each item of an open running account at the time of the entry thereof.").

Bray also accuses CITGO of breaching agreements between Bray and Bray's former or potential customers.[4]  Bray's Interrogatories Response, at 1-2.  CITGO cannot breach a contract to which it is not a party.  The Court finds the record devoid of any evidence to support a finding that CITGO was party to the identified third party contracts.  Bray argues that "CITGO has stood by as others have infringed upon Bray Terminals, Inc. customers."  Id.  Even assuming this allegation to be true, it does not raise a genuine issue of material fact as to CITGO breach of alleged third party contracts.

Finally, Bray argues that CITGO reaffirmed its previous 1988 debt to Bray in a 2003 letter.  Dkt. # 34, Ex. 3, Foster March 14, 2003, Letter to Bray.  This letter states:

> Our records indicate that Bray Terminals, Inc. has an outstanding balance due CITGO Petroleum Corporation in the amount of $193,671.04.  We also acknowledge that you have an outstanding claim against CITGO in the amount of $46,735.21.  We propose the following: Bray Terminals pay CITGO the difference in our claims, $146,935.83.  We also ask that Bray Terminals also provide me with your invoice, all supporting documents to back up your claim, and interest calculations relating to your invoice.  We will then thoroughly investigate your claim and give you a prompt answer. . . .

Id.  This letter evidences that CITGO was made aware of Bray's claim of a debt, not that CITGO agreed that the debt claim is meritorious.  Therefore, a new limitations period was not triggered with the issuance of this letter.  See FDIC v. Moore, 898 P.2d 1329, 1332 (Okla. Civ. App. 1995) ("a mere reference to debt without attendant request for extension of time to pay or a promise to pay sometime in the future is not sufficient to trigger" a new limitations period).  Thus, the Court finds

---

[4]      Third parties identified in relation to Bray's contractual counterclaims are:  Mirabito/Savory; Philip Dahlia; Florence General Store; Johnson's Fuel; Karklin Oil Company; Small Fuels; Desjarlais; Jiff-E. Mart; and A.L. Moon.

that Bray failed to show that a genuine issue of material fact exists as to its counterclaim for breach of contract, and CITGO is entitled to summary judgment on this counterclaim.

**B.**

Bray alleges that CITGO violated the DFA's "implied covenants of good faith and fair dealing that required all parties to cooperate and work together to expand the distributor's volumes." Dkt. # 26, Ex. C, Bray's Interrogatories Response, at 5.  Specifically, Bray argues that "CITGO, by and through its agents . . . breached these implied covenants by prohibiting Bray from branding new accounts and aiding other distributors to take over Bray accounts." Id.  Bray again offers no material facts to support this contention.  To advance this counterclaim, Bray points to CITGO's refusal to allow it to brand Desjarlais, Inc. in 2001.  However, Bray presents no evidence that CITGO acted in bad faith.  Mere conclusory allegations are insufficient to defeat summary judgment; rather, "there must be evidence on which the [trier of fact] could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.  Accordingly, the Court finds that Bray has failed to show that a genuine issue of material fact exists as to its counterclaim of bad faith, and CITGO is entitled to summary judgment on this counterclaim.

**C.**

Bray argues that CITGO intentionally interfered with Bray's business relationships with the following parties in the following years: Johnson Fuel in 1986; Jiff-E-Mart in 1991; Florence General Store in 1993; Dahlia in 1994; Small Fuel Service in 1996; A.L. Moon in 1996; Karklin Oil in 1997; and Desjarlais, Inc. in 2001.  Dkt. # 26, Ex. C, Bray's Interrogatories Response, at 1-2. Bray fails to present any evidence of malice to support its claim for intentional interference with contractual relations.  See, e.g., Crystal Gas Co. v. Oklahoma Natural Gas Co., 529 P.2d 987, 989

8

(Okla.1974); <u>McNickle v. Phillips Petroleum Co.</u>, 23 P.3d 949, 952 (Okla. Civ. App. 1999) (framing the issue as "whether the action taken by [defendant]. . . was fair, with honest intent, and to better [defendant's] business and not principally to harm" plaintiff).  Bray states that "CITGO's actions include signing new agreements with Bray customers, including Mirabito, Champlain Fuel and Small Fuels.  In addition, Peter Strassell [of CITGO] allowed competition to move into Montpelier, VT."  Dkt. # 26, Ex. C, Bray's Interrogatories Response, at 1-2.  Such action are not by themselves unlawful.  Bray fails to present evidence of malice to defeat summary judgment on this counterclaim.

The record does not support a counterclaim for intentional interference with potential business advantage because Bray does not allege any "unlawful" means used by CITGO to interfere with Bray's business advantage.  <u>See</u> <u>Gaylord Entertainment Co. v. Thompson</u>, 958 P.2d 128, 149 (Okla.1998) ("If there is no component of unlawfulness in either the objective of the agreement or in the means by which the purpose or objective is to be accomplished, there can be no actionable tort of interference with advantageous relations.").  Bray states that "Mirabito ceased doing business with Bray because it was able to purchase product directly from CITGO at a cheaper price."  This arrangement between CITGO and Mirabito is well within the realm of legal business practice.  Again, Bray has failed to establish the existence of an element essential to its case.[5]  <u>See</u> <u>Celotex</u>, 477 U.S. at 317.  Accordingly, the Court finds that Bray has failed to show that a genuine issue of

---

[5]     Further, Bray's counterclaim for tortious interference is subject to a two-year statute of limitations.  Okla. Stat. tit. 12, § 95.  <u>See</u> <u>Neff v. Willmott, Roberts & Looney</u>, 41 P.2d 86 (Okla. 1935).  Thus, the counterclaim as to all customers or potential customers is time-barred.

material fact exists as to its counterclaim of tortious interference with contractual relationships and

potential business advantage, and CITGO is entitled to summary judgment on this counterclaim.

**D.**

Bray's fourth counterclaim alleges that CITGO violated provisions of the PMPA.  Congress enacted the PMPA in 1978 to protect the rights of franchisees against "arbitrary or discriminatory termination or non-renewal."  15 U.S.C. § 2801, et seq.  The DFA established Bray as a CITGO franchisee.  The DFA automatically renewed for successive three year periods; the record is silent regarding termination or non-renewal of the DFA.  This counterclaim is based on the allegation that "CITGO refused to allow Bray to supply CITGO branded products to service stations which CITGO had previously approved for branding with the CITGO tradename and trademark in contravention of the terms of the [DFA] and the [PMPA]."  Bray mischaracterizes the protections of the PMPA. Under the PMPA, a franchisor is prohibited from discriminating, and is required to give a franchisee proper notice prior to termination or non-renewal.[6]  Bray does not present evidence of an "arbitrary or discriminatory termination or non-renewal" of the DFA or proposed termination or non-renewal of the DFA.  Accordingly, the Court finds that Bray has failed to show that a genuine issue of material fact exists as to its counterclaim under the PMPA, and CITGO is entitled to summary judgment on this counterclaim.

**E.**

Bray's final counterclaim alleges that CITGO violated the Sherman Act, 15 U.S.C. § 1, et seq.  Bray alleges that CITGO willfully assisted other distributors in taking over Bray's business accounts.  Bray states that "CITGO's actions were an attempt to eliminate competition in the distribution of CITGO branded products in upstate New York and constituted actions in restraint of

---

[6]     CITGO supplied Bray with a summary of title I of the PMPA prior to executing the DFA. Dkt. # 26, Ex. A-1, DFA.  See Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380 (10th Cir. 1981).

11

trade in contravention of the Sherman Act."  Dkt. # 4, at 4.   However, Bray offers no evidence to support its claim that CITGO interfered with regional competition in the petroleum market.  To the contrary, the record suggests that CITGO has deterred Bray from monopolizing a throughput terminal in upstate New York.  Bray and CITGO entered into  a non-exclusive agreement, and Bray lost potential business revenue when CITGO marketed its product through other terminals.  Bray has presented no evidence that CITGO's business conduct is unlawful.  Further, Bray alleges a Sherman Act conspiracy, yet sues only one entity, thereby undermining its allegation.  See Full Draw Productions v. Easton Sports, Inc., 182 F.3d 745 (10th Cir. 1999).  The Court finds that Bray has failed to show that a genuine issue of material fact exists as to its counterclaim under the Sherman Act,[7] and CITGO is entitled to summary judgment on this counterclaim.

## V.

Based on the above, the Court finds that CITGO has carried its burden under Rule 56(c), thereby requiring Bray to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586-87.  This Bray failed to do.  It has not presented evidence to demonstrate that a genuine issue of material fact exists regarding the amount owed to CITGO under the terms of the DFA or regarding any of Bray's counterclaims.  Accordingly, the

---

[7]     Even if a reasonable jury could find evidence of an antitrust violation, the statute of limitations has long since run.  The relevant four-year statute of limitations is triggered when the competitor first suffers injury.  15 U.S.C. § 15(b); see Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc., 392 F.3d 265, 270 (8th Cir. 2004) (holding that, in an antitrust case, "the statute of limitations begins to run from the initial violation where defendants are accused of attempting to monopolize . . .").  Bray expressed concern about CITGO's market practices as early as 1993.  Dkt. # 26, Ex. P, Bray March 18, 1993, Letter to John Mitchell.  Therefore, assuming an antitrust violation, Bray's basis for a claim expired in 1997 and is now time-barred.

Court need not address CITGO's affirmative defenses to Bray's counterclaims, and CITGO is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that plaintiff CITGO's motion for summary judgment (Dkt. # 25) is hereby **granted** as to its claim for relief and as to defendant's counterclaims.  CITGO is directed to submit a proposed form of judgment no later than **November 10, 2005**.

**DATED** this 2nd day of November, 2005.

_____

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

13